UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Flame Spray North America, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Kerr Pumps, Inc., <br><br> Defendant. | Civil Action No. 6:18-CV-2845-BHH <br><br> **Opinion and Order** |

This matter is before the Court on Defendant Kerr Machine Co.'s ("Kerr"), improperly named in Plaintiff's complaint as "Kerr Pumps, Inc.," motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), filed on December 21, 2018. (ECF No. 11.) Plaintiff Flame Spray North America, Inc. ("Flame Spray") filed a response in opposition on January 3, 2019. (ECF No. 13.) Kerr filed a reply on January 17, 2019. (ECF No. 16.) The relevant issues are fully briefed and the matter is ripe for disposition. For the reasons set forth in this Order, the motion to dismiss is denied.

**BACKGROUND**

Flame Spray is a South Carolina company headquartered in Laurens County, South Carolina. (Compl. ¶ 1, ECF No. 1.) Flame Spray makes thermal spray coatings that enhance the performance of machine and industrial parts, as well as certain industrial component parts, including plungers used in oil and gas industry pumps. (*Id.*) Kerr is an Oklahoma corporation with its principle place of business in Sulphur, Oklahoma. (Mot. to Dismiss, ECF No. 11 at 1.) Kerr manufactures and sells large pumps for use in oil and gas exploration and production. (ECF No. 11-1 at 2.) Flame Spray alleges that Kerr

1

ordered from Flame Spray the manufacturing and coating of a large volume of custom plungers for use in Kerr's fracking pumps but failed to pay Flame Spray for more than a million dollars' worth of plungers that Kerr ordered, received, and/or accepted. (Compl. ¶¶ 2–3.) Flame Spray asserts causes of action for breach of contract, unjust enrichment, and specific performance. (*Id.* ¶¶ 38–70.) Kerr asserts that a number of the Flame Spray plungers in its pumps failed prematurely, and that several of Kerr's customers notified Kerr to cease installing Flame Spray plungers in pumps to be sold to such customers. (ECF No. 11-1 at 2.) Kerr states that it determined it could not continue to use Flame Spray plungers in its pumps and notified Plaintiff that it could not accept any more plungers and that it would not pay for the plungers that it could not use. (*Id.* at 2–3.) Kerr's motion to dismiss asserts that Plaintiff has not and cannot show that Kerr had sufficient contacts with South Carolina to meet the requirements of due process for personal jurisdiction. (*Id.* at 1.)

## **STANDARD OF REVIEW**

When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). If the court addresses the issue of jurisdiction on the basis of pleadings and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). In deciding such a motion, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for

the existence of jurisdiction." *Id.* at 676.

A district court sitting in diversity, when evaluating whether it possesses personal jurisdiction over a defendant, utilizes a two-step inquiry:

> [F]irst, it must be determined whether the statutory language [of the state's long-arm statute], as a matter of construction, purports to assert personal jurisdiction over [the] defendant; and second, assuming that the answer to the first question is affirmative, it must be determined whether the statutory assertion of personal jurisdiction is consonant with the Due Process Clause of the United States Constitution.

*Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982) (citing *Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 703 (4th Cir.1970)). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citations omitted). "Consequently, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Id.* (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir.1996)). "The canonical opinion in this area remains *International Shoe* [*Co. v. Washington*, 326 U.S. 310 (1945)], [which held that a trial court may] exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (quoting *International Shoe*, 326 U.S. at 316).

> The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut,* 126 F.3d 617, 623–24 (4th Cir.1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to

3

those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984). However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 416. [Whereupon, the court clarified that it would only determine whether the defendants' contacts were sufficient to subject them to specific jurisdiction in South Carolina because the plaintiff did not contend that general jurisdiction applied].

A defendant has minimum contacts with a jurisdiction if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1990). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958). In determining the existence of minimum contacts, the court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in the Plaintiff's favor. *See, e.g., Precept Med. Products, Inc., v. Klus,* 282 F. Supp. 2d 381, 385 (W.D.N.C. 2003) ("for the purposes of a Rule 12(b)(2) motion, the Court will accept the Plaintiff's version of disputed facts").

The Fourth Circuit has applied a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." [*Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215–16 (4th Cir. 2001)] (citing *Helicopteros,* 466 U.S. at 415–16, and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 476–77, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1988)).

Although the test for purposeful availment can be somewhat imprecise, significant factors typically include: defendant's physical presence in the forum state, the extent of negotiations in the forum state, the extent to which the contract was to be performed in the forum state, and who initiated the relationship. *Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship,* 93 F. Supp. 2d 622, 626 (D. Md. 2000). Underlying these factors is the central question of whether a defendant has performed purposeful acts in the forum state such that the defendant has created a substantial relationship with the forum state. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners,* 229 F.3d 448, 451 (4th Cir. 2000); *ESAB*

*Group,* 126 F.3d at 623.

*McNeil v. Sherman*, No. CIV.A. 209CV00979PMD, 2009 WL 3255240, at *2–3 (D.S.C. Oct. 7, 2009).

## **DISCUSSION**

In its opposition to Kerr's motion to dismiss, Flame Spray clarifies its position that this Court has specific personal jurisdiction over Kerr. (*See* ECF No. 13 at 1.) Nevertheless, for the sake of completeness the Court will briefly address the question of general personal jurisdiction in this matter.

### **A. General Jurisdiction**

The Court finds that the factors necessary to support the existence of general jurisdiction are absent in this case. Kerr is an Oklahoma corporation. Its only physical location is in Oklahoma. Its principal place of business is in Oklahoma. It does not conduct regular business in South Carolina. It does not maintain an office or employees within the State of South Carolina, nor does it send agents into South Carolina to conduct business. It does not advertise or solicit business in South Carolina and has no known customers in South Carolina. It does not have a designated agent for service of process in South Carolina. (*See* Foster Decl. ¶¶ 4–5, ECF No. 11-2.) In short, Kerr has not had "continuous and systematic" contacts with the State of South Carolina that would render it "essentially at home" in South Carolina, and this Court does not have general jurisdiction over Kerr. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (citing *Goodyear,* 564 U.S. at 919).

### **B. Specific Jurisdiction**

Considering the complaint and other pleadings in the instant case, the Court finds that Flame Spray has established a prima facie showing that this Court possesses

specific personal jurisdiction over Kerr. On the one hand, it is true that Kerr did not originally initiate contact with Flame Spray for the purpose of sourcing the plungers. Rather, an independent sales contractor acting as an agent of Flame Spray introduced Kerr and Flame Spray to one another, which led to further negotiations between the parties regarding the design and manufacture of the plungers. (*See* Mor Decl. ¶¶ 5–6.) Courts often consider which party initiated the relationship as a relevant factor in determining whether a defendant has the requisite "minimum contacts" with a jurisdiction, and at first blush this factor weighs against a finding of minimum contacts in the instant case. *See, e.g.*, *Autoscribe Corp. v. Goldman and Steinberg*, 47 F.3d 1164, *6 (4th Cir. 1995) (holding that a group of contacts involving the asserted solicitation of business by defendants, relied on by plaintiff as a foundation for personal jurisdiction, did not constitute purposeful availment because the contacts were not initiated by defendants).

On the other hand, several factors support the conclusion that Kerr purposely availed itself of the privileges of conducting commercial activities in South Carolina. It is undisputed that for more than one year Kerr sent repeated purchase orders to Flame Spray requesting that Flame Spray custom manufacture and apply thermal spray coating to thousands of plungers that would ultimately be used as component parts in Kerr's oil and gas pumps. (*See* ECF Nos. 13 at 2–4; 16 at 2.) Under South Carolina law, a contract is formed when a seller accepts a buyer's purchase order. *See Weisz Graphics Div. of Fred B. Johnson Co. v. Peck Indus., Inc.*, 403 S.E.2d 146, 148 (S.C. Ct. App. 1991) ("In the case of goods manufactured to order, identification to the contract usually occurs when the first step of production begins.") As such, the parties' contracts were formed in South Carolina.

6

Moreover, the commercial value of the goods and services that Kerr sought from Flame Spray was significant. Flame Spray alleges that Kerr owes more than one million dollars on invoices for plungers that Kerr accepted and for plungers that Flame Spray manufactured according to Kerr's specifications but for which Kerr has refused delivery. (*See* Compl. ¶¶ 3, 27–33.)

Furthermore, Flame Spray executed on and performed its activities under the purchase orders in South Carolina. (Mor Decl. ¶¶ 10–18, ECF No. 13-1.) These activities ranged from analysis and technical planning for the custom manufacture and coating of the plungers to physically manufacturing completed plungers for shipment. (*Id.*) Drawing all required inferences in Flame Spray's favor, Kerr was aware that the contracts were being substantially performed in South Carolina. *See McNeil*, 2009 WL 3255240, at *4 (finding minimum contacts established in South Carolina where defendant entered into a contract with plaintiff knowing that plaintiff would perform the requested services in South Carolina). This is demonstrated by Kerr sending numerous purchase orders to Flame Spray in South Carolina (*see* ECF Nos. 1-1 through 1-7), by correspondence between the parties recognizing that Flame Spray was manufacturing and coating the plungers in South Carolina, and by Kerr repeatedly arranging for a carrier to pick up thousands of completed plungers from Flame Spray's South Carolina facility (Mor Decl. ¶¶ 14–17 & Ex. 1). Given the nature of modern commerce, a defendant's physical presence in the forum state is not required to ground specific jurisdiction; thus, the fact that no representative of Kerr travelled to South Carolina for purposes of entering into or performing the contract does not control. *See, e.g.*, *Gateway Gaming, L.L.C. v. Custom Game Design, Inc.*, No. CIVA 8:06-01649 HMH, 2006 WL 2781043, at *3 (D.S.C. Sept. 25, 2006) ("[W]hen a

7

defendant, through its own actions, has created a substantial connection with the forum state, jurisdiction may not be avoided merely because the defendant did not *physically* enter the forum State." (emphasis in original; internal modifications, quotation marks, and citation omitted)). Accordingly, the Court finds that Kerr's substantial business relationship with Flame Spray constitutes "purposeful availment" to an extent that justifies this Court's imposition of personal jurisdiction over Kerr. *See Consulting Engineers Corp. v. Geometric, Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citing "the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State" as the first part of a three-prong test for evaluating whether the requirements of due process for asserting specific personal jurisdiction have been met).

The remainder of the specific jurisdiction inquiry elicits no serious dispute between the parties. It is undisputed that Flame Spray's claims arise out of the activities, directed toward South Carolina, that the Court has determined constitute Kerr's purposeful availment of the privilege of conducting business here. *See id.* (citing "whether the plaintiff's claims arise out of those activities directed at the State" as the second prong of the due process analysis). Moreover, the exercise of personal jurisdiction is constitutionally reasonable under the circumstances because South-Carolina-citizen Flame Spray has an interest in seeking relief in its home state and where it claims injury, and because it is presumptively not unreasonable to require Kerr to litigate in a forum where it established a long-term, financially significant business relationship with an essential parts manufacturer. *See id.* (citing "whether the exercise of personal jurisdiction would be constitutionally reasonable" as the third prong of the analysis); *see also Burger King,* 471 U.S. at 473 ("[B]ecause [defendant's] activities are shielded by the benefits and

8

protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (quotation marks omitted)). Therefore, the Court finds that Flame Spray has made a prima facie showing that the requirements of due process have been satisfied and that this Court's exercise of personal jurisdiction over Kerr does not offend traditional notions of fair play and substantial justice. *See International Shoe*, 326 U.S. at 316.

## **CONCLUSION**

For the reasons set forth above, Kerr's Rule 12(b)(2) motion to dismiss (ECF No. 11) is denied.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 5, 2019
Greenville, South Carolina