IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Flame Spray North America Inc., | ) | C/A No. 6:18-cv-02845-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Kerr Pumps Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's Motion to Amend Answer to State Counterclaims. ECF No. 41. Plaintiff filed a Response in Opposition, and Defendant filed a Reply. ECF Nos. 43, 44.

## **BACKGROUND**

This case arises out of an agreement between the parties pursuant to which Defendant purchased thousands of plungers for use in manufacturing fracking pumps. Plaintiff brought suit in this Court on October 19, 2018, alleging that Defendant had failed to pay for over a million dollars' worth of plungers. ECF No. 1. In its Answer, Defendant admitted that it had not paid for a substantial number of the delivered plungers but raised several affirmative defenses including breach of contract. ECF No. 19. Defendant specifically asserted that Plaintiff "breached the contract by delivering to Defendant plungers with coating that cracked when used in frac pumps." *Id*. at ¶ 46. On September 19, 2019, the Court entered a Conference and Scheduling Order with a pleading amendment deadline of November 14, 2019. ECF No. 20. The amendment deadline

1

was subsequently extended to January 14, 2020.  ECF No. 24.  Neither party sought leave to amend its pleadings within the time allotted.

On June 1, 2020, Defendant's expert produced a report stating, inter alia, that none of the tested plungers had a coating hardness of 1500HV.  Plaintiff's rebuttal expert report of June 26, 2020, did not contradict this finding.  Defendant asserts that the parties specifically agreed upon, and Defendant paid more for, plungers with a coating hardness of at least 1500HV.  Based on the expert reports, Defendant seeks leave to amend its answer to add counterclaims for breach of contract and fraud based on the plungers' failure to meet the agreed-upon specifications.[1]

## APPLICABLE LAW

### Rule 15(a)

Federal Rule of Civil Procedure 15(a) states that a party may amend its pleading as a matter of course within 21 days after serving it or 21 days after service of a responsive pleading or motion.  Fed R. Civ. P. 15(a)(1).  After that time, a party may amend its pleading "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The Rules provide that the court "should freely give leave when justice so requires."  *Id*.  Leave to amend under Rule 15(a) "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile."  *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009).

---

[1] No proposed amended answer is attached to the Motion or the Reply.  *See generally* ECF Nos. 41, 44.  However, Defendant describes its proposed counterclaims in its briefing.

2

*Rule 16*

A party seeking to amend its pleading after the deadline provided in the scheduling order must also satisfy the good cause standard of Rule 16. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). "Good cause requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence, and whatever other factors are also considered, the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." *McMillan v. Cumberland Cty. Bd. of Educ.*, 734 F. App'x 836, 846 (4th Cir. 2018) (quoting *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012)). *See also RFT Mgmt. Co. LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015) ("Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment.") (quoting *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004)). Consequently, "good cause under Rule 16(b) exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." *George v. Duke Energy Ret. Cash Balance Plan*, 560 F. Supp. 2d 444, 481 (D.S.C. 2008) (citation and internal quotation marks omitted).

## **DISCUSSION**

As previously noted, Defendant proposes counterclaims for both breach of contract and fraud. Defendant raised breach of contract as an affirmative defense in its Answer filed September 19, 2019, as follows:

> Defendant asserts that Plaintiff breached the contract between the parties by delivering to Defendant plungers with coating that cracked when used in frac pumps, resulting in many of Defendant's customers refusing to accept

3

> plungers manufactured by Plaintiff and refusing to accept fluid ends that included plungers manufactured by Plaintiff.

ECF No. 19 at 7.

It is clear from this affirmative defense that as of the filing of its Answer, Defendant possessed sufficient factual knowledge to have asserted a breach of contract counterclaim based on the plungers' allegedly defective coating. When a party "could have brought the proposed counterclaims before the deadline and simply chose not to," Rule 16(b)'s good cause standard generally is not satisfied. *McDevitt v. Wellin*, C/A No. 2:13-cv-3595-DCN, 2017 WL 2257420, at *3 (D.S.C. Feb. 1, 2017) (citing *George v. Duke Energy Ret. Cash Balance Plan*, 560 F. Supp. 2d 444, 481 (D.S.C. 2008)). *See also McMillan*, 734 F. App'x at 846 (finding no good cause where the proposed additional claim "stem[med] from the same allegations on which [the plaintiff] asserted her other claims").

Defendant urges the "vast distinction between (1) claiming that a party is not liable on a contract because the parts failed to perform and (2) knowing, through expert opinion procured by both parties, that the parts were manufactured in a false and deceptive manner." ECF No. 44 at 5. However, there is no question that the first proposed counterclaim for breach of contract could have been asserted (and in fact was asserted, as an affirmative defense) prior to the amendment deadline. The fact that Defendant, through discovery, has gained additional information about the specifics of that breach does not justify amendment to include a counterclaim that could have been added before. Rather, the decision not to raise a breach of contract counterclaim with the available evidence appears to have been strategic. *See McDevitt*, 2017 WL 2257420, at *3 (finding no good cause where it was "clear [defendants] made a strategic decision to forego amending their counterclaims before the deadline").

4

Furthermore, as to the fraud counterclaim, Plaintiff convincingly argues that Defendant was aware of coating hardness values less than 1500HV prior to the amendment deadline. The parties agree that the coating purchased was the Caboflam H 654XC and that on March 10, 2017, Plaintiff sent Defendant an email describing the Caboflam H 654XC as "Extreme High Density, Hardness 1500HV—Technical bulletin not yet available." *See* ECF No. 43-1 at 1. However, on April 10, 2017, Plaintiff sent an email with the subject line "Technical discussion on plungers" that described the Caboflam H 654XC coating as "exhibit[ing] a constant hardness >76 HRc." ECF No. 43-2 at 1. Plaintiff explains in its briefing that a value of 76 HRc is equivalent to approximately 1000HV[2]—significantly less than the allegedly required 1500HV. ECF No. 43 at 2. On June 1, 2017, Plaintiff delivered a presentation to Defendant on the Caboflam H 654XC-coated plungers, which stated that inspection and metallurgical analysis had confirmed a hardness ">1400HV"—again, less than 1500HV. ECF No. 43-3 at 3. These communications demonstrate that Defendant had knowledge of hardness levels less than 1500HV prior to the amendment deadline of January 14, 2020.

To the extent the proposed fraud counterclaim is based, specifically, on coating hardness values less than 1500HV, that information had been in Defendant's possession for approximately three years prior to the expert report. Defendant was also aware, at the time of filing its Answer, that the plungers' failure was caused by a defect in the thermal coating. ECF No. 19 at 7. Moreover, nothing in the experts' reports speaks to any intentional or negligent misrepresentation regarding the quality of the plungers. Such

---

[2] Defendant does not dispute the accuracy of this conversion in its Reply. Notably, 1000HV is less than the 1200HV allegedly offered to Defendant as a cheaper alternative during negotiations. *See* ECF No. 41 at 3.

5

claims are derived from the failure of the plungers, the pre-purchase emails of Plaintiff's representatives, and the inferences argued by Defendant. In short, Defendant had all the necessary information at its disposal to make the proposed amendment before the pleading amendment deadline.

Because the proposed counterclaims could have been asserted prior to the amendment deadline, the Court finds no good cause for Defendant's delay and the Motion to Amend is denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Amend Answer to State Counterclaims [41] is **DENIED**.

IT IS SO ORDERED.

                                            s/ Donald C. Coggins, Jr.
                                            United States District Judge

October 21, 2020
Spartanburg, South Carolina